## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-22055-CIV-ALTONAGA/Goodman

**CAFÉ LA TROVA LLC**,

      Plaintiff,

v.

**ASPEN SPECIALTY INSURANCE
COMPANY**,

      Defendant.

_____/

### ORDER

**THIS CAUSE** is before the Court on Plaintiff, Café La Trova LLC's Motion for Summary

Judgment ("Plaintiff's Motion") [ECF No. 30], filed on December 11, 2020; and Defendant, Aspen

Specialty Insurance Company's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or in

the Alternative, for Summary Judgment ("Defendant's Motion") [ECF No. 32], filed on December

15, 2020.  Defendant filed a Response to Plaintiff's Motion [ECF No. 35], to which Plaintiff filed

a Reply [ECF No. 46].  Plaintiff filed a Response to Defendant's Motion [ECF No. 48], to which

Defendant filed a Reply [ECF No. 52].  The Court has carefully considered the Complaint (*see*

[ECF No. 1-2] 4–10[1]), the parties' written submissions,[2] the record, and applicable law.  For the

following reasons, Plaintiff's Motion is denied, and Defendant's Motion is granted.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.  Citations to deposition testimony rely on the pagination and line numbering in the original document.

[2] The parties' factual submissions include: Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment ("Pl.'s SOF") [ECF No. 31]; Defendant's Counterstatement of Material Facts in Response to Plaintiff's Statement of Material Facts in Support of Its Motion for Summary Judgment ("Def.'s Resp. SOF") (*see* [ECF No. 36] 1–10); Defendant's Additional Statement of Undisputed Material Facts ("Def.'s Add. SOF") (*see id.* 11–15); Plaintiff's Reply Statement of Material Facts ("Pl.'s Reply SOF") [ECF No. 47]; Defendant's Statement of Undisputed Material Facts in Support of Its Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or in the Alternative, for Summary Judgment ("Def.'s SOF") [ECF No. 33]; and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in

## I.    BACKGROUND

This declaratory judgment action involves an insurance coverage dispute regarding losses suffered by Plaintiff in connection with the ongoing COVID-19 pandemic.  Plaintiff owns and operates a restaurant by the name of "Café La Trova."  (Compl. ¶ 2; Def.'s SOF ¶ 1).  Effective January 10, 2020 through January 10, 2021, Plaintiff purchased a commercial property insurance policy (the "Policy") from Defendant.  (*See* Compl. ¶ 8; Pl.'s SOF ¶ 1; Def.'s SOF ¶ 17).  The Policy identifies the insured property as the Café La Trova restaurant located at 971 S.W. 8th Street in Miami, Florida.  (*See* Compl. ¶ 9; *id.*, Ex. A, Policy 27).

In the Building and Personal Property Coverage Form, the Policy states, in part, that Defendant "will pay for direct physical loss of or damage to" property covered by the Policy, resulting from any covered cause.  (Policy 58).  Under the Business Income (and Extra Expense) Coverage Form, the Policy further states Defendant "will pay for the actual loss of Business Income [the insured] sustain[s] due to the necessary 'suspension' of [the insured's] 'operations' during the 'period of restoration[,]'" provided such suspension is "caused by direct physical loss of or damage to" covered property resulting from a covered cause.  (*Id.* 74 (alterations added)). Finally, the Civil Authority provision of the Policy provides coverage for the loss of business income "[w]hen a Covered Cause of Loss causes damage to property other than [the insured's covered] property" and, "in response to dangerous physical conditions resulting from th[at] damage" or covered cause, an action of civil authority "prohibits access" to the covered property. (*Id.* 75 (alterations added)).

---

Support of Its Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or in the Alternative, for Summary Judgment ("Pl.'s Resp. SOF") [ECF No. 49].

Plaintiff asserts that as a direct result of the global COVID-19 pandemic and certain governmental orders that restricted restaurant operations in an effort to curb the spread of COVID-19, it lost use of the covered property "for its intended use and purpose[.]"[3] (Pl.'s SOF ¶ 34 (alteration added); *see also* Compl. ¶ 22). Specifically, Plaintiff identifies an order issued by the City of Miami on March 17, 2020, which prohibited restaurants from serving patrons for in-person dining but permitted restaurants to offer food for delivery, carry-out, or drive-thru. (*See* Pl.'s SOF ¶ 32; Def.'s SOF ¶ 3). Plaintiff also identifies Emergency Order 07-20, issued by Miami-Dade County on March 19, 2020, which incorporated Emergency Order 03-20 and provided, in part, that restaurants had to close on-premises service to customers but could remain open for delivery, pick-up, or take-out services. (*See* Compl. ¶ 20; Def.'s SOF ¶¶ 4–5). Plaintiff ceased all operations on March 15, 2020. (*See* Compl. ¶ 21; Def.'s SOF ¶ 2).

As a result, Plaintiff alleges it "lost use of the Property, the restaurant and bar business was interrupted, and business income was lost." (Compl. ¶ 22). Plaintiff also contends it had to use chemicals to clean surfaces, move furniture, install partitions, and discard spoiled food; and that these actions caused damage to the property.[4] (*See* Pl.'s SOF ¶¶ 36–38). Plaintiff submitted notice

---

[3] Defendant disputes this fact, complaining that Plaintiff has not offered any record citation in support of this assertion. (*See* Def.'s Resp. SOF ¶ 34). Defendant further argues that "Plaintiff was not prohibited by government order from offering take-out or delivery services but chose not to offer such services 'simply because it didn't make business sense.'" (*Id.* (quoting Martinez Dep. [ECF No. 33-2] 122:24–25); *see also* Def.'s SOF ¶ 10). Plaintiff does not dispute this statement. (*See* Pl.'s Resp. SOF 5).

[4] Defendant disputes these actions were "a direct and proximate result of COVID-19 and/or government orders[,]" stating "Plaintiff has not cited any order purporting to require [the use of chemicals to clean, the moving of furniture, or the installation of partitions], and neither the cited City of Miami nor Miami-Dade County orders did so." (Def.'s Resp. SOF ¶ 36 (alterations added; quotation marks omitted)). Defendant also argues Plaintiff's answer to an interrogatory regarding physical damage to the property "makes no mention whatsoever of the alleged damage recited in Plaintiff's Statement of Material Facts" due to moving furniture and installing partitions. (*Id.* ¶ 37). Finally, Defendant disputes that discarding spoiled food was a "direct and proximate result of COVID-19 and/or government orders" because "Plaintiff was not prohibited . . . from offering take-out or delivery services." (*Id.* ¶¶ 36, 38 (alteration added; quotation marks omitted)).

3

of its claim under the Policy to Defendant on March 23, 2020.  (*See* Compl. ¶ 26; *id.*, Ex. B, Notice of Claim 98–99).  On March 24, 2020, Defendant assigned Plaintiff a claim number.  (*See* Compl. ¶ 28).

On March 31, 2020, Plaintiff filed this action against Defendant, seeking a declaration that its claim is fully covered by the Policy.  (*See generally* Compl.).  In particular, Plaintiff contends its losses are covered by the Building and Personal Property, Business Income, and Civil Authority coverages.  (*See generally* Pl.'s Mot.).  Defendant argues Plaintiff's losses are not covered by the Policy and, in any event, there is no justiciable controversy because Defendant did not deny or have time to investigate Plaintiff's claim before Plaintiff filed this suit against it.  (*See generally* Def.'s Mot.).  The parties' competing motions ask the Court to determine (1) whether there is a justiciable controversy sufficient for the Court to exercise subject-matter jurisdiction, and (2) whether the business income losses Plaintiff incurred relating to the COVID-19 pandemic are covered by the Policy.

## II.     LEGAL STANDARDS

### A.  <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

Federal Rule of Civil Procedure 12(h)(3) provides that, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Thus, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted).  Federal courts are courts of limited jurisdiction and "possess only that power authorized by [the] Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (alterations added; citations omitted).  It is therefore "presumed

that a cause lies outside [the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Id.* (alterations added; citations omitted).

### B. **Motions for Summary Judgment**

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (citing Fed. R. Civ. P. 56(c)(1); alteration added; quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts [] but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal*

*Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (alteration added; citation omitted). Where "reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (citations omitted).

When the parties file cross-motions for summary judgment, the standard of review "does not differ from the standard applied when one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1315–16 (N.D. Ga. 2013) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)); *see also United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions . . . will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (alteration added; citation omitted)).

## III.   ANALYSIS

### A.   Defendant's Motion to Dismiss

Defendant moves to dismiss this declaratory judgment action arguing the lack of a justiciable controversy deprives the Court of subject-matter jurisdiction. (*See* Def.'s Mot. 4–6). When, as here, a claim seeking relief under Florida's Declaratory Judgment Act is removed from state court to federal court, the Court construes such claim as an action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. section 2201. *See Garden Aire Vill. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011) (construing claim under federal Declaratory Judgment Act because "Florida's Declaratory Judgment Act is a procedural mechanism . . . [that] does not confer any substantive rights" and "Florida's procedural rules are

inapplicable . . . [in] a diversity case" (alterations added; quotation marks and citation omitted)). Subject-matter jurisdiction under the federal Declaratory Judgment Act depends on the existence of an "actual controversy." *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (quotation marks omitted); *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013) (explaining the actual controversy requirement "is jurisdictional"). The actual controversy requirement, which is congruent with the "case or controversy" requirement of Article III of the Constitution, is evaluated "on a case-by-case basis." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quotation marks and citation omitted); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (alteration added; citation omitted)).

For a justiciable controversy to exist, there must be a substantial, "definite and concrete" dispute "touching the legal relations of parties having adverse legal interests." *MedImmune, Inc.*, 549 U.S. at 127 (quotation marks and citation omitted)). The controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552 (citations omitted). The party invoking jurisdiction generally "must show, at an 'irreducible minimum,' that at the time the complaint was filed, he ha[d] suffered some actual or threatened injury resulting from the defendant's conduct, that the injury can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co.*, 68 F.3d at 414 (alteration added; citations omitted).

In *Atlanta Gas Light Co.*, the Eleventh Circuit concluded that when the plaintiff, Atlanta Gas, filed its lawsuit, no justiciable controversy existed between it and its insurer. *See id.* at 409.

There, , gas company Atlanta Gas filed a declaratory judgment action to determine the extent of its insurers' liability for environmental cleanup costs. *See id.* at 411–12. One day before filing suit, Atlanta Gas sent notice via mail to its insurers regarding their potential liability; the insurers received the notice after the lawsuit had already been filed. *See id.* at 412. In other words, at the time the complaint was filed, the insurers had no notice of the claim and no opportunity to respond or take a position on the claim. *See id.* Moreover, at the time Atlanta Gas mailed notice and filed suit, it had not yet incurred any actual cleanup costs, and "it was not clear that state and federal environmental agencies would ever require cleanups at any of [Atlanta Gas's] former [facilities]." *Id.* at 415 (alterations added). Because Atlanta Gas provided inadequate notice for a merely hypothetical loss, the Eleventh Circuit held there was no actual controversy when the complaint was filed and a declaratory judgment was not warranted. *See id.*

Defendant argues this case presents no justiciable controversy because, as in *Atlanta Gas Light Co.*, Plaintiff did not provide adequate notice of its insurance claim before filing its Complaint.[5] (*See* Def.'s Mot. 4–6). Plaintiff provided Defendant notice of its claim on March 23, 2020. (*See* Compl. ¶ 26; Notice of Claim 98–99; Def.'s SOF ¶¶ 32–33). A mere eight days later, on March 31, 2020, Plaintiff filed this declaratory judgment action against Defendant. (*See generally* Compl.; Def.'s SOF ¶ 36). Defendant contends it did not have the opportunity to investigate Plaintiff's claim and it had not yet taken a coverage position at the time Plaintiff filed suit. (*See* Def.'s Mot. 6; Def.'s SOF ¶¶ 37–38; Compl. ¶ 29).

---

[5] This case is factually distinguishable from *Atlanta Gas Light Co.* in at least two key respects: (1) Defendant received notice of Plaintiff's claim one week *before* Plaintiff filed this action, whereas the insurer in *Atlanta Gas Light Co.* only received notice after the policyholder filed its lawsuit; and (2) Plaintiff here alleges it has actually suffered a covered loss, whereas in *Atlanta Gas Light Co.*, it was not clear that the policyholder would ever incur a loss for which it would seek to file an insurance claim.

As the Eleventh Circuit has recognized, later events may ripen a controversy that was previously nonjusticiable. *See Progressive Mountain Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 734–35 (11th Cir. 2020) (noting that, while "actions for declaratory judgment on insurance coverage are generally not justiciable until there has been at least a threat of a claim," "subsequent events may be able to ripen a case or controversy for decision" (citations omitted)); *Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 509 F. App'x 919, 922–23 (11th Cir. 2013) (rejecting the insurer's argument that breach of contract and declaratory judgment claims were not justiciable because the insurer had not yet denied the claims when the lawsuit was filed, concluding that "ripeness can be affected by events occurring after the case is filed" (collecting cases)); *Atlanta Gas Light Co.*, 68 F.3d at 415 n.12 (acknowledging "events that have transpired since the complaint was filed could give rise to justiciable claims").

For example, an insurer's failure to timely respond to a policyholder's claim can ripen that claim during the pendency of the lawsuit, even if the claim was not justiciable at the time the suit was filed. *See Wilshire Condo. Ass'n v. QBE Ins. Corp.*, Case No. 10-23806-Civ, 2013 WL 12092532, at *5 (S.D. Fla. Apr. 10, 2013). In *Wilshire Condominium Association*, the policyholder filed a declaratory judgment action on October 21, 2010, without first submitting notice to the insurer. *See id.* at *1. The lawsuit itself served as "notice" to the insurer. Thereafter, on October 28, 2010, the policyholder contacted the insurer to try to resolve their dispute through appraisal. *See id.*

The insurer filed a motion to dismiss for lack of justiciability 24 months later, in September 2012. *See id.* at *5. As of the date of the court's decision in April 2013 — 31 months after the policyholder filed the complaint — the insurer still had not denied the policyholder's claim or responded to its request for an appraisal. *See id.* On those facts, the court held that the insurer's

failure to timely respond to the policyholder's claim was a sufficient basis to infer that the insurer had constructively denied the claim.  *See id.* ("For all intents and purposes, we view a written denial . . . as the functional equivalent of a *de facto* denial of coverage resulting from [the insurer's] prolonged refusal to respond to [the insured's] coverage claim." (alterations added; citation omitted)).  The court therefore denied the motion to dismiss for lack of justiciability.  *See id.*

Here, over 8 months elapsed between the date Plaintiff filed the Complaint and Defendant's Motion to Dismiss for lack of justiciability.  As of the date of this decision — over 10 months after the Complaint was filed — it appears Defendant has still not paid, denied, investigated, or otherwise officially responded to Plaintiff's insurance claim.  (*See* Pl.'s SOF ¶ 40;[6] Pl.'s Resp. SOF 10); *see also, e.g.*, *200 Leslie Condo. Ass'n Inc. v. QBE Ins. Corp.*, No. 10-61984-Civ, 2011 WL 2470344, at *15 (S.D. Fla. June 21, 2011) (suggesting, but declining to decide, that the insurer's failure to respond to the policyholder's demand letter for 8 months constituted a *de facto* disagreement between the parties).  Moreover, although Defendant has not yet denied the insurance claim, it has made clear throughout these proceedings its position that Plaintiff's losses are not covered by the Policy.  (*See, e.g.*, Answer & Affirm. Defenses [ECF No. 6] 6–7 ("Café La Trova's claim is not covered . . . ." (alteration added)); *id.* 9 (seeking declaration "that there is no coverage for Café La Trova under the [] Policy" (alteration added)); Def.'s Mot. 4 ("[T]he Policy does not provide coverage for Plaintiff's alleged business interruption claim." (alteration added)); Def.'s Reply 6 ("[Plaintiff's] alleged loss of business income is not covered." (alteration added))).

---

[6] Defendant disputes this fact, but states only that "Plaintiff has not identified the specific damages for which it is making [its] claim."  (Def.'s Resp. SOF ¶ 40).  Defendant also states Plaintiff has not made a "specific, pinpoint reference to particular parts of record material" in support of this assertion.  (*Id.* (quotation marks omitted)).

On these facts, the Court concludes that Defendant has constructively denied Plaintiff's claim and there is an "actual controversy" between the parties. Defendant's Motion to Dismiss for lack of justiciability is therefore denied.

### B. Motions for Summary Judgment

The issue raised by the parties' cross-motions for summary judgment is whether the Policy covers Plaintiff's loss of business income relating to the COVID-19 pandemic. Specifically, the parties dispute whether Plaintiff's alleged loss of use of the covered property for its intended purpose constitutes a "direct physical loss" to trigger coverage under the Business Income (and Extra Expense) Coverage Form and the Building and Personal Property Coverage Form. (*See* Pl.'s Mot. 3–9; Def.'s Mot. 6–14). The parties also dispute whether the governmental orders issued by the City of Miami and Miami-Dade County trigger coverage for the loss of business income under the Civil Authority provision. (*See* Pl.'s Mot. 10–12; Def.'s Mot. 14–17). Finally, if the Policy does provide coverage for Plaintiff's losses, the parties dispute whether an exclusion applies. (*See* Pl.'s Mot. 12–15; Def.'s Resp. 16–19).

#### 1. Florida Insurance Law

The parties agree that the Policy is governed by Florida law. (*See* Pl.'s Mot. 3, 15–16; Def.'s Resp. 4–5; Def.'s Mot. 7–8; Pl.'s Resp. 4). Under Florida law, when determining coverage under an insurance policy, courts look at the policy "as a whole" and are required to give "every provision its full meaning and operative effect." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quotation marks and citations omitted). "[I]nsurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (per curiam) (alteration added; quotation marks and citation omitted); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) ("[The] terms of an

insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties." (alteration added; citation omitted)).

A policy's unambiguous language is therefore controlling. *See Steinberg*, 393 F.3d at 1230. However, where the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Id.* (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). An operative term is not necessarily ambiguous just because it is not defined in the policy. *See Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co., Inc.*, No. 08-60967-Civ, 2009 WL 700246, at *4 (S.D. Fla. Mar. 17, 2009) (citation omitted). Ultimately, the interpretation of an insurance contract — including whether a provision is ambiguous — is a question of law to be determined by the court. *See Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citation omitted).

When the parties dispute coverage and exclusions under a policy, a burden-shifting framework applies. The insured bears the initial burden to "prov[e] a loss from causes within the terms of the policy." *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3d DCA 1977) (alteration added); *see also Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-Civ, 2017 WL 1250419, at *7 (S.D. Fla. Apr. 4, 2017) ("In Florida, the insured has the burden of proving facts that bring its claim within an insurance policy's affirmative grant of coverage." (quotation marks and citation omitted)). Once the insured shows its losses are covered, the burden shifts to the insurer to establish that the losses are excluded from coverage under the policy's terms.[7] *See Bove*,

---

[7] Plaintiff suggests that because the Policy does not contain a virus exclusion, its COVID-19-related losses are covered. (*See, e.g.*, Pl.'s Mot. 2 ("The Policy has a long list of exclusions, but the Policy does not have

347 So. 2d at 680 (citation omitted); *see also Scottsdale Ins. Co. v. Klub Kutter's Bar & Lounge, LLC*, No. 17-cv-61321, 2018 WL 1933702, at *3 (S.D. Fla. Apr. 24, 2018) ("Although the insured bears the burden of proving that a claim is covered by the insurance policy, the burden of proving an exclusion to coverage . . . is on the insurer." (omission in original; quotation marks and citations omitted)). If the insurer establishes that an exclusion applies, the burden then shifts back to the insured to demonstrate an exception to the exclusion. *See Berkower*, 2017 WL 1250419, at *7 (citation omitted); *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (citation omitted).

2.  *Business Income (and Extra Expense) Coverage Form and the Building and Personal Property Coverage Form*

Plaintiff argues the Business Income (and Extra Expense) Coverage Form and the Building and Personal Property Coverage Form each provide coverage for its alleged "loss of business income . . . suffered as a result of the COVID-19 pandemic and/or government closures." (Pl.'s Mot. 1–2 (alteration added); *see id.* 3–5). The Business Income (and Extra Expense) Coverage Form states:

> [Defendant] will pay for the actual loss of Business Income [Plaintiff] sustain[s] due to the necessary "suspension" of [its] "operations" during the "period of restoration." The "suspension" must be caused by *direct physical loss of or damage to* property at [covered] premises . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy 74 (alterations and emphasis added)). The term "suspension" includes "[t]he slowdown or cessation of [Plaintiff's] business activities." (*Id.* 82 (alterations added)). In certain circumstances,

---

any virus exclusion or other exclusion that would preclude coverage for the Claim." (emphasis omitted))). The Policy's exclusionary provisions plainly cannot be used to establish coverage in the first instance. *See Siegle*, 819 So. 2d at 740 ("[P]olicy exclusions cannot create coverage where there is no coverage in the first place." (alteration added; citation omitted)); *id.* ("[T]he existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss." (alteration added)). Such an approach would be "directly contrary to the tenets of insurance contract interpretation." *Id.*

the Policy also provides Extra Expense coverage for "necessary expenses [Plaintiff] incur[s] during the 'period of restoration' that [it] would not have incurred if there had been no *direct physical loss or damage* to property caused by or resulting from a Covered Cause of Loss."  (*Id.* 74 (alterations and emphasis added)).

Similarly, the Building and Personal Property Coverage Form states: [Defendant] will pay for *direct physical loss of or damage to* Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.  (*Id.* 58 (alteration and emphasis added)).  A "Covered Cause of Loss" is defined as "*direct physical loss* unless the loss is excluded or limited in th[e] [P]olicy."  (*Id.* 87 (alterations and emphasis added)).

Thus, to trigger coverage under the Business Income (and Extra Expense) Coverage Form and the Building and Personal Property Coverage Form, Plaintiff must show it sustained "direct physical loss of or damage to" the insured property.  Plaintiff argues "direct physical loss" should be construed to include loss of use of the property (Pl.'s Mot. 6–8 (quotation marks omitted)), and that its claims should therefore be covered because it "suffered direct physical loss of the entire Property for its intended use and purpose . . . due to the COVID-19 pandemic and related government orders" (*id.* 8 (alteration added)).  Plaintiff further contends its property was physically impacted because its "customers were unable to enter the restaurant premises, sit at the tables, sit at the bar, and dance and listen to music inside the nightclub."  (*Id.* 9).

Although the Policy does not define "direct physical loss," numerous courts  "have found — both before and in response to the COVID-19-pandemic — that a direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."  *Graspa Consulting, Inc. v. United*

*Nat'l Ins. Co.*, No. 20-23245-Civ, 2021 WL 199980, at *5 (S.D. Fla. Jan. 20, 2021) (alteration adopted; quotation marks and citations omitted). The words "'[d]irect' and 'physical' modify loss and impose the requirement that the damage be actual." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (alteration added; citing *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017); other citation omitted). "Direct physical loss" therefore "exclude[s] alleged losses that are intangible or incorporeal[,]" including "when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Mama Jo's Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (alterations added; quotation marks and citation omitted).

Contrary to Plaintiff's assertion, under Florida law, loss of use of property for its intended purpose does not constitute "direct physical loss."[8] *See Atma Beauty, Inc. v. HDI Global Specialty SE*, No.: 1:20-cv-21745, 2020 WL 7770398, at *4 (S.D. Fla. Dec. 30, 2020) ("While Plaintiff argues that a loss of functionality of, access to, or intended use of the [property] constitutes physical loss or damage, it is not supported by the plain language of the Policy or Florida law." (alteration added)); *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, No. 9:20-cv-80677, 2020 WL 7251643, at *5 (S.D. Fla. Dec. 9, 2020) (finding no direct physical loss where plaintiff alleged that it was "unable to use [its] property for its intended purpose" (alteration in original; quotation marks omitted)); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ, 2020 WL 5051581, at *5–8 (S.D. Fla. Aug. 26, 2020) (rejecting plaintiff's argument that policy provided coverage for temporary inability to use restaurant for indoor dining due to government orders

---

[8] Defendant also argues the Policy excludes loss or damage resulting from "loss of use." (Def.'s Resp. 16–17; Policy 89). Because the Court concludes Plaintiff's claims are not covered by the Policy, the Court does not consider whether any exclusions apply to Plaintiff's losses.

relating to COVID-19 because the property did not suffer any "tangible, actual, or physical" harm); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04418, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) (holding the plaintiff could not recover for income lost as a result of government shutdown orders because impaired use or value of covered property is not equivalent to physical loss or damage).

By now, a growing number of courts have rejected claims that economic losses due to COVID-19 or related government orders are covered under insurance policy provisions identical or similar to those at issue here. *See, e.g.*, *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-cv-22833, 2020 WL 6392841, at *8 (S.D. Fla. Nov, 2, 2020) (no coverage for business income losses under clause providing coverage for "direct physical loss of or physical damage [to Covered Property] caused by or resulting from a Covered Cause of Loss" where plaintiffs' property did not suffer "any physical harm" (alteration added; quotation marks omitted)); *Malaube, LLC*, 2020 WL 5051581, at *7 ("[A]ny interruption in business must be caused by some *physical problem* with the covered property . . . which must be caused by a covered cause of loss." (first alteration added; emphasis and omission in original; quotation marks and citations omitted)); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-cv-1605, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020) (finding "there is simply no coverage" under an insurance policy requiring "direct or physical loss of or damage" to property for economic losses associated with COVID-19 closures (quotation marks omitted)); *Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co.*, No. 3:20-cv-5898, 2020 WL 7889061, at *2 (N.D. Fla. Dec. 18, 2020) ("[A] growing number of state and federal courts in Florida and around the country have considered the issue and have almost uniformly held that economic losses resulting from state and local government orders closing businesses to slow the spread of COVID-19 are

not covered under 'all-risk' policy language identical to that in this case because such losses were not caused by direct physical loss or damage to the insured property." (alteration added; collecting cases)). Rather, to establish coverage, Plaintiff must show that its loss of business income occurred because its covered property suffered some actual, physical harm.

Plaintiff's contention that its loss was "direct" and "physical" because "it is possible or likely that COVID-19 may have been present at the insured premises[,]" while creative, is unavailing. (Pl.'s Resp. SOF 6 (alteration added); *see also* Compl. ¶ 25 (alleging COVID-19 "is highly contagious and it lingers in the air and on surfaces, thus impacting the physical use of the insured premise[s] and causing direct physical loss" (alteration added))). "[T]he mere presence of the virus on the physical structure of the premises" does not amount to "direct physical loss." *Mena Catering, Inc. v. Scottsdale Ins. Co.*, No. 1:20-cv-23661, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) (alteration added; quotation marks and citations omitted); *see also id.* (noting plaintiff does not suffer "direct physical loss" by "the presence of the virus on its physical surfaces" because "coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property" (quotation marks omitted; quoting *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 cv 2160, 2020 WL 5630465, at *2–3 (N.D. Ill. Sept. 21, 2020))); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, No. 20-23586-Civ, 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) (adopting "the nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage" under similar policy language)). Accordingly, in the absence of any record evidence that COVID-19 physically damaged or altered the property, the virus's mere presence is insufficient to trigger coverage.

Plaintiff nevertheless insists it has suffered "direct physical loss" because it had to discard spoiled food, use chemicals to clean surfaces, and move furniture and install partitions, which

resulted in broken chairs, scratched floors, and damage from drilling holes to affix partitions.  (*See* Pl.'s Mot. 9–10; Pl.'s SOF ¶¶ 36–38).  This argument misses the mark for several reasons.  First, the Policy provides coverage for spoilage when the cause of loss is a breakdown or contamination caused by a "[c]hange in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling[,] or humidity control apparatus . . ., [c]ontamination by the refrigerant[,]" or a "[p]ower outage . . . resulting from a cause of loss by a covered peril on the premises, due to conditions beyond [Plaintiff's] control."  (Policy 54–55 (alterations added)).  Plaintiff states it had to discard spoiled food because its restaurant was closed "as a direct and proximate result of COVID-19 and/or government orders" and "[b]ecause there was no one to consume it."  (Pl.'s Reply SOF 3 (alteration added; quotation marks omitted)).  Its spoilage losses were not the result of a covered cause, such as temperature or humidity changes or a power outage.  *See Mena Catering, Inc.*, 2021 WL 86777, at *6 (under identical provision, finding "there is no 'Covered Cause of Loss,' as defined above, because even if there was spoilage of perishable food, it was allegedly caused by cancellations, not because of breakdowns or contaminations related to temperature or humidity changes or power outages").  The Policy therefore does not provide coverage for Plaintiff's spoilage losses.

Second, the use of cleaning products on covered property does not constitute actual harm, as required for coverage under both the Business Income (and Extra Expense) Coverage Form and the Building and Personal Property Coverage Form.  "[U]nder Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Mama Jo's*, 823 F. App'x at 879 (alteration added; collecting cases).  As such, this purported loss does not satisfy the "direct physical loss" requirement under the Policy.

Finally, the Court is unpersuaded by Plaintiff's argument that damage caused by moving furniture and installing partitions is sufficient to trigger coverage for its business income losses. The Business Income (and Extra Expense) Coverage Form provides coverage for business income "due to the necessary suspension of your operations," which "must be caused by direct physical loss of or damage to property." (Policy 74 (quotation marks omitted)). Plaintiff does not suggest that the suspension of its operations and loss of business income were caused by the damage it asserts it sustained. For instance, Plaintiff does not argue it closed its restaurant and bar because of broken chairs, scratched floors, and holes drilled for installing partitions. Plaintiff instead argues its economic losses were caused by the COVID-19 pandemic and related government orders. (Pl.'s Mot. 1–2; Pl.'s Resp. 4). *See Mama Jo's Inc.*, 2018 WL 3412974, at *10 (concluding the plaintiff "cannot recover under the Business Income (And Extra Expense) Coverage because [the p]laintiff cannot show that there was any suspension of operations *caused by* 'physical damage'" (alteration and emphasis added; citation omitted)).

Furthermore, the Policy only provides coverage for business income lost during the "period of restoration," which begins "72 hours after the time of direct physical loss or damage" and ends either "[t]he date when the property . . . should be repaired, rebuilt[,] or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location," whichever occurs first. (Policy 74, 82 (alterations added; quotation marks omitted)). In other words, the Policy provides coverage only during the period that the property is being "repaired, rebuilt[,] or replaced." (*Id.* 82 (alteration added)). Plaintiff's rearranging of furniture and installation of partitions cannot "reasonably be described as repairing, rebuilding, or replacing." *Indep. Rest. Grp v. Certain Underwriters at Lloyd's, London*, No. cv 20-2365, 2021 WL 131339, at *7 (E.D. Pa. Jan. 14, 2021).

Remarkably, under Plaintiff's logic, the "repair[s]" it undertook while its operations were suspended caused the very "damage" it now asserts is sufficient to invoke coverage in the first instance under the Business Income provision. Such a construction is nonsensical. *See Malaube, LLC*, 2020 WL 5051581, at *9 (observing "[t]he words 'repair' and 'replace'" contemplate that the insured premises suffered some previous "physical damage" necessitating those repairs or replacements (alteration added; quotation marks and citations omitted)). The Policy simply does not provide Business Income coverage for Plaintiff's losses due to moving furniture and installing partitions. *See El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-cv-21525, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (rejecting the plaintiffs' argument that "forced physical alterations" undertaken during COVID-19-related restaurant closure constitute physical damage to establish coverage under identical Business Income Coverage provision (quotations marks omitted)).

Likewise, Plaintiff's business income losses are not covered under the Building and Personal Property Coverage Form. The Form states Defendant "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Policy 58 (alteration added)). "As an initial matter, business income is not included within the list of Covered Property" for purposes of the Building and Personal Property Coverage Form. *Nahmad*, 2020 WL 6392841, at *6. In fact, the Policy expressly states money and accounts are not Covered Property. (*See* Policy 59). In any event, the Building and Personal Property coverage applies only to the damaged property itself. Accordingly, any physical damage caused by moving furniture and installing partitions is insufficient to provide coverage for Plaintiff's economic losses. For these reasons, neither the Building and Personal Property Coverage Form nor the

Business Income (and Extra Expense) Coverage Form provides coverage for Plaintiff's lost business income relating to the COVID-19 pandemic.

### 3. *Civil Authority Provision*

Plaintiff also argues its business income losses are covered under the Policy's Civil Authority provision.  The Civil Authority provision states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, [Defendant] will pay for the actual loss of Business Income [Plaintiff] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area . . . ; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policy 75 (alterations added); *see also id.* 23 (requirement that described premises be within one mile from the damaged property does not apply in Florida)).  This section of the Policy provides coverage for the loss of business income only "[w]hen a Covered Cause of Loss causes damage to property other than [the insured's covered] property."  (*Id.* 75 (alterations added)).  As previously defined, "Covered Cause of Loss" means a "*direct physical loss* unless the loss is excluded or limited in this policy."  (*Id.* 87 (emphasis added)).

Plaintiff generally contends "the government orders were issued because COVID-19 was rapidly spreading in neighboring properties, our community, our country, and worldwide."  (Pl.'s Resp. 5; Pl.'s Reply 3).  Plaintiff further submits "COVID-19 was everywhere, causing loss and damage, including physical, tangible damage."  (Pl.'s Resp. 5; Pl.'s Reply 3).  Plaintiff does not argue, however, that any property in the immediately surrounding area suffered any physical

damage.  As several courts have found, there is no civil authority coverage in the absence of physical damage to surrounding properties.  *See Mena Catering, Inc.*, 2021 WL 86777, at *7 (no civil authority coverage where the plaintiff alleged "civil orders were issued in response to slow the global pandemic, not because of actual damage to any specific property near the premises" (citations omitted)); *El Novillo Rest.*, 2020 WL 7251362, at *7 (granting motion to dismiss civil authority coverage claim where the plaintiffs "fail to allege any physical damage to any property in the immediate area[,]" instead alleging that "[t]he COVID-19 pandemic and the ensuing governmental orders . . . are physically impacting private commercial property in Miami-Dade County" (first alteration added; quotation marks omitted)); *Dime Fitness, LLC v. Markel Ins. Co.*, No. 20-ca-5467, 2020 WL 6691467, at *4 (Fla. Cir. Ct. Nov. 10, 2020) (no civil authority coverage where the only "'damaged property' is lost business income" and "[t]here is no allegation of any physical damage to physical property" (alteration added)); *id.* ("Again, the Executive Order was issued to address a public health crisis. There was no damage to other property which caused the issuance of the Executive Order.  Nor was the Executive Order issued in response to a dangerous physical condition that caused property damage.").

The Civil Authority provision also requires that an action of civil authority "prohibit[] access" to the covered property.  (Policy 75 (alteration added)).  Plaintiff argues the government orders it cites prohibited access to its covered property because its "customers were unable to enter the restaurant premises, sit at the table, sit at the bar, and dance and listen to music inside the nightclub."  (Pl.'s Resp. 6; Pl.'s SOF ¶ 35).  But as Defendant points out — and Plaintiff does not dispute — the emergency directives Plaintiff relies on merely restricted indoor, in-person dining; the orders explicitly permitted restaurants to remain open to offer food for delivery, pick-up, or drive-thru services.  (Def.'s SOF ¶¶ 3–5).  "Merely restricting access" to Plaintiff's restaurant,

CASE NO. 20-22055-CIV-ALTONAGA/Goodman

without completely prohibiting access, "does not trigger coverage under the Policy's Civil Authority provision." *Nahmad*, 2020 WL 6392841, at *9 (citation omitted); *see also El Novillo Rest.*, 2020 WL 7251362, at *7 (no civil authority coverage where the government order "merely restricted access to indoor dining," but the restaurants could "remain[] open for delivery and takeout" (alteration added)); *SA Palm Beach*, 2020 WL 7251643, at *6 (no civil authority coverage where government orders "did not prohibit customer access to [the p]laintiff's restaurant, but merely restricted access to indoor dining" (alteration added)).  Accordingly, Plaintiff is not entitled to coverage for its business income losses under the Civil Authority provision as a matter of law.[9]

### IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant, Aspen Specialty Insurance Company's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or in the Alternative, for Summary Judgment **[ECF No. 32]** is **DENIED** as to the Motion to Dismiss and **GRANTED** as to the Motion for Summary Judgment.

2. Plaintiff, Café La Trova's Motion for Summary Judgment **[ECF No. 30]** is **DENIED**.

3. Final judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 16th day of February, 2021.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[9] Because Plaintiff's losses are not covered under the Policy, there is no need for the Court to evaluate whether any exclusions apply.  *See Atma Beauty, Inc.*, 2020 WL 7770398, at *4 n.4 ("Having found no coverage under the Policy, it is not necessary for the Court to determine whether any exclusions under the Policy apply . . . ." (alteration added)).